IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER ADAM ERWIN,

Plaintiff,

vs.                                              Case No. 21-3213-SAC

JEFF ZMUDA, et al.,

Defendants.

MEMORANDUM AND ORDER

The plaintiff Christopher Adam Erwin ("Erwin") *pro se* is hereby required either to show good cause, in writing, to the Honorable Sam A. Crow, United States District Court Judge, why this action should not be dismissed due to the deficiencies in the plaintiff's complaint as discussed herein or to file an amended complaint correcting those deficiencies which may be curable as a matter of law and fact.

**Nature of Suit**

Erwin is presently an inmate at El Dorado Correctional Facility ("EDCF"). He brings this 42 U.S.C. § 1983 action against Jeff Zmuda, EDCF's Warden and over 40 other defendants, most of whom work in some capacity at EDCF, some of whom are employed by Aramark Food Services, and some of whom are employed by Centurion. Because of his insulin-dependent diabetes, Erwin asserts his constitutional rights under the 8th and 14th Amendments have been violated by the defendants' denial of proper accommodations and care for his medical condition since February of 2021. His 60-page complaint sets out 66 counts for relief alleging they are actionable as violations of not only the United States Constitution but of the Americans with Disabilities Act, Title II. Erwin seeks injunctive relief requiring timely distribution of

1

insulin and meals, adequate nurses and staff to ensure correct insulin administration, sufficient food supplies to meet all diabetic needs, correction of all food mistakes within 30 minutes, dietician-approved menus with carbohydrate information, all meals prepared according to the menus, specific requirements for all meals and snacks, reimbursement of fines and lost wages due to discipline, and compensatory damages for violations of his civil rights, including punitive damages. The court has granted Erwin leave to proceed in forma pauperis and assessed an initial partial filing fee which Erwin has paid. ECF# 6.

**Statutory Screening of Prisoner Complaints**

A court must screen prisoners' complaints which seek relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The screening court must dismiss the entire complaint or any part of it that, "is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

2

The same standard used for Fed. R. Civ. P. 12(b)(6) motions is used for §

1915 dismissals, and this includes the newer language and meaning taken from

*Twombly* and its "plausibility" determination. *See Kay v. Bemis*, 500 F.3d 1214, 1218

(10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090,

1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). As a result, courts "look to

the specific allegations in the complaint to determine whether they plausibly support

a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new

standard, "a plaintiff must 'nudge his claims across the line from conceivable to

plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). The Tenth Circuit has made

clear, "that, to state a claim in federal court, a complaint must explain what each

defendant did to [the pro se plaintiff]; when the defendant did it; how the

defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff

believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d

1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations

to round out a plaintiff's complaint or construct a legal theory on a plaintiff's

behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation

omitted).

**42 U.S.C. § 1983 Claims for Eighth and Fourteenth Amendment Violations**

"To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."

*West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*,

973 F.2d 1518, 1523 (10th Cir. 1992). In addressing a claim brought under § 1983, the

analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id.*

A viable § 1983 claim must show each named defendant caused a violation of the plaintiff's constitutional rights. *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020). "[A] complaint must make clear exactly who is alleged to have done what to whom." *Robbins v. State of Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Conclusory allegations of involvement are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There is no respondeat superior liability under § 1983. *Id.* ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials' own individual actions, has violated the Constitution."). Thus, the plaintiff must name each defendant in the caption and in the body of the complaint, and there describe the personal unconstitutional actions allegedly done by each defendant with "dates, locations, and circumstances." *Lynn v. Willnauer*, 2021 WL 1390384, at *10 (D. Kan. Apr. 13, 2021). The Tenth Circuit "recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. *Fudge v. Martinez*, 504 F.Supp.3d 1215, 1221 (D.N.M. 2020) (citing *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012); *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)).

4

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). To allege a claim for supervisory liability against a governmental official, the plaintiff must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 677), *cert. denied*, 563 U.S. 960 (2011). A culpable "state of mind" means here that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur. *Id.* at 1196. The Tenth Circuit recognizes that prison officials' responses to grievances may show nothing more than a reasonable reliance on medical staff's judgment. *Phillips v. Tiona*, 508 Fed. Appx. 737, 744 (10th Cir. 2013) ("Merely sending grievances to a warden is not enough to attach liability, and the warden's response signified nothing more than a reasonable reliance on the judgment of prison medical staff."); *see Pemberton v. Dedeke*, 2021 WL 4709933, at *3 (D. Kan. Oct. 9, 2021).

In bringing a § 1983 claim for deliberate indifference to his prison conditions and medical needs, the plaintiff as a convicted person has his rights protected under the Eighth Amendment while pretrial detainees can assert their similar rights under the Fourteenth Amendment. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). The standards for a general Eighth Amendment prison conditions claim were recently summarized by the Tenth Circuit in *Brooks v. Colorado Department of Corrections*, 12 F.4th 1160, 1173 (10th Cir. 2021):

Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An inmate raising an Eighth Amendment conditions-of-confinement claim must prove both an objective and subjective component associated with the deficiency. *Id.* at 834, 114 S.Ct. 1970. The objective component requires conditions sufficiently serious so as to (1) deprive an inmate "of the minimal civilized measure of life's necessities" or (2) subject an inmate to "a substantial risk of serious harm." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (quotation omitted). "The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." *Id.* To prove deliberate indifference, a prisoner must adduce sufficient facts to show the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* This high standard for imposing personal liability on prison officials (*i.e.*, the same standard of subjective recklessness used in the criminal law) is necessary to ensure that only those prison officials that inflict punishment are liable for violating the dictates of the Eighth Amendment. *Id.* at 835–45, 114 S.Ct. 1970; see also *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (holding that *Farmer*'s "subjective component is not satisfied[ ] absent an extraordinary degree of neglect"); *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999) (recognizing that *Farmer*'s deliberate indifference standard sets out a "stringent standard of fault").

*Id.* For a denial of medical care claim in prison, the same deliberate indifference standard applies, that is, the plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), *cert. denied*, 142 S.Ct. 312 (2021). The objective component requires the inadequate medical care be sufficiently serious as "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). The subjective component requires establishing that medical "official knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Thus, allegations and evidence showing only defendant's negligence in diagnosing or treating the medical need do "not rise to the high level of deliberate indifference." *Id. (*citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803,811 (10th Cir. 1999)). The plaintiff's disagreement with a course of treatment does "not establish deliberate indifference." *Id.* at 996 (citing *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019) ("reasoning that a 'mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation'")).

As for any claim challenging prison disciplinary proceedings, the court will look to the following law. "[A] State shall not 'deprive any person of life, liberty, or property without due process of law.' U.S. Const. amend. XIV, § 1." *Moore v. Bd. of County Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a plausible due process claim under the Fourteenth Amendment, the plaintiff must come forward with specific allegations showing, (1) that he has a constitutionally protected liberty interest in avoiding placement in administrative segregation, and (2) that the procedures used to place and maintain him in administrative segregation did not satisfy constitutional requirements. See *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005); *Kentucky Dept. of Cor. v. Thompson*, 490 U.S. 454, 460 (1989). Negligent conduct

7

does not provide grounds for liability under § 1983. See *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015); *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1257 (10th Cir. 2007); see also *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)("due process has never been understood to mean that the State must guarantee due care on the part of its officials").

"'[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated.'" *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007) (quoting *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting in turn *Heck v. Humphrey*, 512 U.S. 477, 487 (1994))). "This rule also applies to challenges to punishments imposed as a result of prison disciplinary infractions." *Cardoso*, 490 F.3d at 199. This rule extends to due process allegations that have included conspiring to convict, preparing false evidence, denying advance notice, making erroneous or inadequate findings, and basing decisions on mistaken facts. *Id.* Consequently, without a showing that the disciplinary convictions have been invalidated, any claim for damages resulting from the prison disciplinary proceedings must be denied. Because the plaintiff's complaint fails to allege that his disciplinary conviction and/or sentence has been invalidated, any claim for monetary damages under § 1983 based on the circumstances resulting in his disciplinary conviction is dismissed.

The court's evaluation of a procedural due process claim entails considering "(1) whether the individual possesses a protected interest to which due

process protection is applicable; and (2) whether the individual has been afforded the appropriate level of process." *Stewart v. Norwood,* 2017 WL 4284971, at *8 (D. Kan. Sept. 27, 2017). As for any alleged protected interest arising from the plaintiff's transfer to segregation, the court will follow this law. Liberty interests protected under the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995) (internal citations omitted). An inmate "does not have a constitutional right to a particular security classification or to be housed in a particular yard." *Blake v. Zmuda,* 2021 WL 5950213, at *2 (D. Kan. Dec. 16, 2021) (citing *Meachum v. Fano,* 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter,* 420 F.3d 571, 577 (6th Cir. 2005) ("a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")), *appeal filed,* (10th Cir. Dec. 27, 2021). Likewise, the Supreme Court has pronounced that, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies,* 315 Fed. Appx. 31, 34 (10th Cir. 2008) (citations omitted). The plaintiff's complaint here fails to allege his segregation or re-assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson,* 545 U.S. at 223–24. Moreover, jail officials are

entitled to great deference in the internal operation and administration of the

facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). The plaintiff's due process

claims are subject to dismissal for lack of a protected liberty interest based on

administrative segregation. Nor does the plaintiff have a liberty interest implicated

from the loss of prison employment. The Tenth Circuit has held:

> [N]either the loss of a prison job nor the loss of an opportunity to earn good
> time credits constitutes any atypical or significant hardship upon the petitioner
> in relation to the ordinary incidence of prison life sufficient to create a liberty
> interest, these allegations do not state a claim for a due process violation. *See
> Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)
> (stating that although states may in some circumstances create a liberty
> interest, "these interests will be generally limited to freedom from restraint
> which ... imposes atypical and significant hardship on the inmate in relation to
> the ordinary incidents of prison life"); *Penrod v. Zavaras*, 94 F.3d 1399, 1407
> (10th Cir.1996) (no liberty interest in prison employment).

*Anderson v. Colorado Dept. of Corrections*, 1999 WL 387163, at *1 (10th Cir. 1999),

*cert. denied*, 528 U.S. 1165 (2000).

As for any alleged protected interest arising from the denial of a

property interest, the Tenth Circuit has applied "the Supreme Court's analysis in

*Sandin v. Conner,* 414 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), to determine

whether a prisoner has a property interest giving rise to a right to due process."

*Johnson v. Whitney,* 723 Fed. Appx. 587, 591 (10th Cir. 2018) (citing *Cosco v. Uphoff*,

195 F.3d 1221, 1223-24 (10th Cir. 1999)); see *Stewart v. Norwood*, 2017 WL 4284971,

at *8 (Under that analysis, the deprivation of a property or liberty interest must

constitute an atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life). Tenth Circuit case law is unsettled on whether a

small monetary fine imposed as part of prison discipline is an atypical or significant

hardship. In *Hornsby v. Jones*, punishments of fines with segregation and reduction in

credit level for a certain number of days did not "rise to the level of disciplinary measures" as to trigger a constitutionally protected interest. 392 Fed. Appx. 653, 655 (10th Cir. Aug. 20, 2010) (citing *Sandin*, 515 U.S. at 487); *see also Guiden v. Werholtz*, 2011 WL 1807443, at *8 (D. Kan. May 11, 2011). But next year, the Tenth Circuit said that a "fine imposed in prison disciplinary proceeding implicates property interest protected by due process." *Whitmore v. Hill*, 456 Fed. Appx. 726, 729 (10th Cir.) (citing *Anderson v. Cunningham*, 319 Fed. Appx. 706, 710-11 (10th Cir.) (unpub), *cert. denied*, 558 U.S. 832 (2009), *cert. denied*, 568 U.S. 863 (2012). Most recently, the Tenth Circuit recognized that it has "little case law applying *Sandin"* analysis on property interests, but that it had granted qualified immunity on due process claims alleging a property interest in prison accounts. *Johnson v. Whitney*, 723 Fed. Appx. 587, 591-92 (10th Cir. Jan. 24, 2018). Thus, courts in this district have elected to resolve this issue under the doctrine of qualified immunity:

> Next, the Court considers whether Toney had a protected property interest in his prison accounts, which would entitle him to procedural due process before a fine could be levied against him. The Court elects to resolve this issue under the qualified immunity doctrine. If qualified immunity applies, it is more than a defense to liability—it is immunity from the suit itself.[50] To determine if qualified immunity applies, a court must consider two elements: (1) whether a constitutional violation occurred, and (2) whether the violated right was "clearly established" at the time of the violation.[51] Both elements must be met to for a plaintiff to overcome qualified immunity, and it is within a court's "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[52]
>
> Under the second element, the Court looks to Supreme Court or Tenth Circuit precedent to determine if a right is "clearly established."[53] Based on Tenth Circuit precedent, whether inmates have a property interest in their prison accounts seems to be an unsettled question of law.[54] However, earlier this year, the Tenth Circuit held that if inmates have a property interest in their prison accounts, that right is not clearly established for qualified immunity purposes.[55]

Defendants are entitled to qualified immunity unless the right claimed by Toney was clearly established at the time of the alleged violation. Since a protected property right in prison accounts is not clearly established in the Tenth Circuit, Kelley, Austin, and Johnson are entitled to qualified immunity on that claim. Qualified immunity is more than a mere defense to liability, it is immunity from suit.

50  *Pearson v. Callahan*, 555 U.S. 223, 261 (2009) (internal citations omitted).
51 *Clark v. Wilson,* 625 F.3d 686, 690 (10th Cir. 2010) (citing *Pearson*, 555 U.S. at 232).
52 *Pearson*, 555 U.S. at 261
53 *Wilson*, 625 F.3d at 690.
54 *See Clark v. Oakley,* 560 Fed. Appx. 804, 808 n.1 (10th Cir. 2014) (citing to a Third Circuit case that found the right exists, but declined to rule on the issue because "strictly speaking that is an issue that is not before [the court]").
55 *Leek v. Miller*, 2017 WL 2459812, at *5 (10th Cir. 2017).

*Toney v. Harrod*, 2017 WL 4758962, at *8–9 (D. Kan. Oct. 20, 2017). The Tenth Circuit

in *Johnson* did not reach the qualified immunity question. Instead, it reversed the

lower court's dismissal because there was an "arguable basis" for a property interest

in that "the alleged deprivation [from his inmate pay] is both atypical in his prison

environment and significant in the context of the minimal pay he receives each

month." 723 Fed. Appx. at 592. The plaintiff Erwin does not allege anything to show

that the imposition of a small fine here to be atypical or a significant hardship in

relation to the ordinary incidents of prison life. Furthermore, based on the analysis in

*Toney* and *Johnson,* the court finds that it was not clearly established in the Tenth

Circuit that a small, monetary fine, like that imposed against Erwin, triggers federal

due process protections during prison disciplinary proceedings. The defendants are

entitled to qualified immunity on this claim.

         In addressing any allegation of a protected liberty interest implicated

here, the court looks to the following. "[D]isciplinary proceedings take place in a

closed, tightly controlled environment peopled by those who have chosen to violate

the criminal law and who have been lawfully incarcerated for doing so."

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). The "proceedings

are not part of a criminal prosecution, and the full panoply of rights due a defendant

in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

The following procedures must be provided in a prison disciplinary hearing:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when
> consistent with institutional safety and correctional goals, to call witnesses and
> present documentary evidence in his defense; and (3) a written statement by
> the factfinder of the evidence relied on and the reasons for the disciplinary
> action.

*Superintendent, Mass. Corr. Inst.*, 472 U.S. at 454. The results of the disciplinary

hearing must also be supported by "some evidence in the record." *Id.* If these

requirements are met, the Court will not overturn the discipline so long as some

evidence supports the decision. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th

Cir.), *cert. denied*, 543 U.S. 860 (2004). This rule is true "even if the evidence . . . is

meager." *Gwinn v. Awmiller*, 354 F.3d at 1219.

      As for any claim over the mishandling of the grievance process, the

Tenth Circuit has held repeatedly that "'there is no independent constitutional right

to state administrative grievance procedures.'" *Burnett v. Allbaugh*, 715 Fed. Appx.

848, 852 (10th Cir. Nov. 7, 2017) (citing *Boyd v. Werholtz*, 443 Fed. Appx. 331, 332

(10th Cir. 2011)).  The panel in *Burnett* further explained:

> A viable due process claim cannot rest on allegations of an unfair or inadequate
> grievance process. *See Von Hallcy v. Clements*, 519 Fed.Appx. 521, 524 (10th
> Cir. 2013) (unpublished) (rejecting prisoner's claim that prison director violated
> due process by providing him with an inadequate prisoner grievance reporting
> system); *Merryfield v. Jordan*, 431 Fed.Appx. 743, 749-50 (10th Cir. 2011)
> (unpublished) (affirming dismissal of claim that prison grievance policy was
> constitutionally inadequate because there is no constitutional right to certain
> grievance procedures); *Ciempa v. Ward*, 150 Fed.Appx. 905, 906-07, 909 (10th

Cir. 2005) (unpublished) (finding no error in judge's dismissal of due process claim based on alleged ineffective prison grievance procedure).

*Burnett v. Allbaugh*, 715 Fed. Appx. at 852. Thus, any claims alleging the mishandling, unfair, or inadequate grievance procedures are subject to dismissal.

**Title II of the Americans with Disabilities Act Claims**

Title II of the Americans with Disabilities Act ("ADA") states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity includes "state and local government[s,]" as well as their "department[s], agenc[ies], ... [and] instrumentalit[ies.]" 42 U.S.C. § 12131(1)(A)-(B). State prisons are within Title II's definition of "public entities." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). Because this definition does not appear to encompass individual defendants, "'most courts have held that Title II claims cannot be maintained against individual defendants.'" *Smith v. Drawbridge*, 2017 WL 9482173, at *7 (W.D. Okla. Sep. 8, 2017) (quoting *Lewis v. N.M. Dep't of Health*, 94 F. Supp. 2d 1217, 1230 (D. N.M. 2000) (citing cases), *aff'd*, 261 F.3d 970 (10th Cir. 2001)) (and cases cited therein); *see also Rix v. McClure*, 2011 WL 166731, at *6 (D. Kan. Jan. 19, 2011) (Individual defendant sued in individual capacity is not a public entity under Title II). Agreeing with this precedent, the court dismisses all ADA claims against all individual defendants sued in their individual capacities for failure to state a claim upon which relief can be granted. The court also dismisses all Title II ADA claims against individual defendants employed by the private corporations Centurion or Aramark. *Phillips v. Tiona*, 508 Fed Appx. 737, 754 (10th Cir. 2013) ("Title II of the

14

ADA does not generally apply to private corporations that operate prisons."). "The proper defendant in a Title II ADA claim is the public entity itself or an official acting in his or her official capacity on behalf of the public entity." *Garcia v. Schnurr*, 2021 WL 2413391, at *4 (D. Kan. June 14, 2021) (citations omitted).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" *Crane v. Utah Dept. of Corrections*, 15 F.4th 1296, 1312 (10th Cir. 2021) (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)). The inability to prove any one of these elements precludes an ADA claim. *Id.* On the third element, the plaintiff must prove his "disability was a but-for cause of the alleged discrimination—that is, . . . [he] need only prove that the alleged discrimination was 'by reason of' . . . [his] disability." *Id.* at 1313 (citations omitted). In a case where a state inmate with ulcerative colitis alleged a Title II claim for refusing reasonable accommodations of a movement pass and extra toilet paper, the Tenth Circuit used the same three elements and also summarized:

> A claim for failure to make a reasonable accommodation does not require a showing of discriminatory motive. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017). Nor is Brooks required to show a complete deprivation of access to food and nutrition to state a Title II reasonable accommodation claim. 28 C.F.R. § 35.150 (requiring that a public entity's services, programs, and activities be "readily accessible"); *see also Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (explaining how impediments to access short of complete deprivation can prevent ready access).

*Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1167–68 (10th Cir. 2021).

15

It is not enough, however, to complain "only about the quality and extent of medical services" received without alleging the denial of services provided to other prisoners or alleging discrimination based on the asserted disability. *Breedlove v. Costner*, 405 Fed. Appx. 338, 341 (10th Cir. Dec. 15, 2010) (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("allegedly negligent medical decisions do not ordinarily fall within the ambit of the ADA")), *cert. denied*, 563 U.S. 965 (2011); *see also Rashad v. Doughty*, 4 Fed. Appx. 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation.").  Medical malpractice claims are not subsumed within the ADA such that allegations of not providing medical care to a disabled inmate triggers an ADA claim. *See O'Connor v. Jones*, 2021 WL 118982, at *7 (M.D. Fla. Jan. 13, 2021) (citing *Jones v. Rutherford*, 546 Fed. Appx. 808, 811-12 (11th Cir. 2013)). Thus, "a claim of failure to provide adequate medical care does not constitute an ADA violation, as it is distinct from an allegation that a plaintiff was denied access to normal services and programs on the basis of their disability." *Gutwein v. Taos County Detention Ctr.*, 2017 WL 3610532, at *6 (D.N.M. Feb. 24, 2017) (citing in part *Nasious v. Colorado*, 495 Fed. Appx. 889, at *2 (10th Cir. 2012) (noting that "[t]he ADA does not provide a remedy for medical negligence or a means to challenge purely medical decisions regarding the propriety of a course of treatment") (internal quotations omitted)). For the most part, the plaintiff's complaint is devoid of allegations pointing to evidence or offering specific details to show the plaintiff was denied

access to prison services, programs or accommodations based on discrimination against him for his disabilities.

**REQUESTS FOR RELIEF**

The plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because he has not alleged a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Even assuming a potential property claim would survive § 1997e(e), the Tenth Circuit has recognized that the Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 Fed. Appx. 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property); *Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."). Punitive damages "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)), *cert. denied*, 536 U.S> 904 (2002). The plaintiff's complaint offers no plausible factual basis for punitive damages in having failed to allege facts showing the defendants acted with a sufficiently culpable state of mind. *See Leek v. Scoggin*, 2021 WL 4263502, at *6 (D. Kan. Sep. 20, 2021).

**PLAINTIFF'S ALLEGATIONS AND DISCUSSION**

In all his counts, Erwin repeats this summary allegation that the defendant "violated my 8th amendment rights due to deliberate indifference and failure to protect me from harm and failure to act. He also violated my rights under ADA Title II by discriminating against me for being diabetic and retaliating against me for complaining." ECF# 5. The different counts name different defendants and include separate, but sparse, allegations of fact. The court hereby summarizes the plaintiff's allegations against each defendant and screens the same under the standards and law set out above and here.

**Warden Zmuda:**

Count One—Zmuda failed to supervise other defendants and denied relief on his diet and medical requests in retaliation for his complaints to the State ADA Coordinator on November 15, 2020, and to the Office of Civil Rights on February 25, 2021.

Counts Four and Eighteen—Zmuda failed to respond to Erwin's grievance of April 22, 2021.

The plaintiff's § 1983 claims are subject to dismissal because the bare allegation of failure "to properly supervise all other defendants" is not sufficient to create personal liability and the denial of grievances is not enough to attach liability. ECF# 5, p. 58. The plaintiff's dissatisfaction with the Warden's responses to his grievances does not violate constitutional rights or prove any injury. *Miles v. Sayeed*, 2019 WL 4958230, at *3 (D. Kan. Oct. 9, 2019) (and cases cited therein). The conclusory allegation of deliberate indifference is not enough to state an Eighth Amendment claim. An inmate claiming retaliation must present facts showing that

"but for the retaliatory motive," the actions "would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). The inmate "must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* For this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). To establish that a defendant's actions were substantially motivated by protected activity, the plaintiff's allegations must show 1) the defendant was aware of his protected activity; 2) the protected activity complained of the defendant's actions; and 3) the alleged retaliatory act "was in close temporal proximity to the protected activity." *Allen v. Avance*, 491 Fed. Appx. 1, 5 (10th Cir. 2012) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)). Temporal proximity between protected activity and a challenged prison action, however, does not in itself demonstrate the causal nexus for a retaliation claim. See *Leek v. Miller*, 698 Fed. Appx. 922, 926 (10th Cir. 2017); *Dawson v. Audet*, 636 Fed. Appx. 753, 758 (10th Cir. 2016). The plaintiff alleges nothing about the circumstances of his complaint or the grievance process that would support an arguable inference of a retaliatory motive or a plausible claim of retaliation. *Strope v. Cummings*, 381 Fed. Appx. 878, 884 (10th Cir. 2010) (A plaintiff inmate has "the rigorous burden ... to show not only that a retaliatory motive may have played some role in his transfer but that such a motive was the strict but-for cause of his transfer."). His allegation of "personal belief that he is the victim of retaliation" is not enough. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citation omitted) ("Mere conclusory allegations of retaliation will not be enough to

withstand" dismissal." (citation omitted)). For all these reasons, the plaintiff's § 1983 claims against Warden Zmuda are subject to dismissal.

The plaintiff's Title II claims against the Warden fail to allege facts showing that the occasional, but repeated, mistakes made in providing proper and timely snacks, meals and insulin amount to a denial of such services on account of his diabetes. Because the plaintiff apparently seeks monetary relief under Title II, he will also need to plead facts showing the defendants acted, in combination, with deliberate indifference in violation of the Eighth Amendment. *See Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1168, 1172 n.13 (10th Cir. 2021). "Retaliation under Title II of the ADA requires a plaintiff to show (1) he engaged in statutorily protected expression, (2) he suffered an adverse action, and (3) the adverse action was causally related to the protected expression." *Young v. City of Claremore, Okla.*, 411 F.Supp.2d 1295, 1316 (N.D. Okla. 2005) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)). The allegations do not plausibly support a causal link between the filing of his ADA complaints and the alleged retaliation of denying unspecified medical and diet requests. *See Barker v. Osemwingie*, 2021 WL 5564625, at *2 (9th Cir. Nov. 29, 2021). The plaintiff's ADA claims against Warden Zmuda are subject to dismissal

**Corrections Manager Libby Keogh and Corrections Manager II Darcie Holthaus:**

Counts Two and Three—Keogh and Holthaus failed to protect Erwin, to correct others, and to provide accommodations as requested in Erwin's grievances but denied all requests in retaliation for his filing of complaints and out of a malicious attitude toward diabetic prisoners.

Count Five—Keogh failed to give a correct response to his grievance on March 23, 2021.

Count Six—Keogh failed to give Erwin the correct informational sheet on a diabetic diet on March 23, 2021, as he requested.

Count Seven—Keogh failed to give a truthful response to his grievance on March 9, 2021.

Counts Eight through Eleven--Keogh unjustly approved disciplinary action to be taken against Erwin on May 7, 2021, despite proof the officers had discriminated against him because of his diabetes and retaliated against him for his complaints, despite being denied a witness, despite showing the officers lied against him, and despite using a recording in violation of the inmate rule book.

Counts 12-13--Holthaus wrongly denied Erwin's two grievances on April 19, 2021, with "canned" responses and without resolving the issues.

Count 14—Holthaus wrongly denied Erwin's grievance on April 26, 2021, with an inaccurate and canned response.

Count 15—Holthaus wrongly denied Erwin's grievance on June 1, 2021, without responding to all his complaints and by ignoring his evidence.

Count 28—Holthaus on May 27, 2021, treated Erwin's letter of complaint as an informal letter rather than as a grievance.

        All counts alleging the inadequate and mishandling of grievance procedures or the wrong and unfair grievance denials are subject to dismissal as stated above. *See Burnett v. Allbaugh*, 715 Fed. Appx. at 852. Conclusory allegations of retaliation are insufficient, and there is nothing alleged to sustain an arguable

inference of a retaliatory motive or a plausible claim of retaliation. The Tenth Circuit has held that disciplinary reports sustained in the administrative process may not be the basis for a retaliation claim:

> "[A] prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011)(per curiam); see also *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) ("An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights. However, claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." (citations omitted)); *Lopez v. Roark*, 637 F. App'x 520, 521 (10th Cir. 2016) (unpublished) (relying on *O'Bryant* to reject inmate's retaliation claim); *Pinson v. Berkebile*, 576 F. App'x 710, 713 (10th Cir. 2014) (unpublished) (same).

*Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018). *cert. denied*, 139 S.Ct. 800 (2019). The plaintiff has not alleged a protected interest entitled to due process, and qualified immunity applies to any arguable basis for a property interest. The failure to provide the current informational sheet on diabetic diets does not rise to a constitutional claim. Finally, the plaintiff's complaint fails to allege any facts plausibly showing that the defendants denied his grievances and his accommodations by reason of his diabetic condition or in retaliation for his other complaints based on his diabetic condition. The allegations fail to show a causal link between the filing of his ADA complaints and the alleged retaliation of denying unspecified medical and diet requests. For all these reasons and those stated earlier, the plaintiff's counts against Managers Keogh and Holthaus are subject to dismissal.

**Warden Jeff Butler:**

Count 16—Butler wrongly responded to his grievance on March 11, 2021, without investigating the issues raised.

Count 17—Butler wrongly stated the facts in response to his grievance on April 16, 2021.

Count 19—Butler failed to supervise subordinates from February 2021 and after by addressing his issues as raised in his grievances.

Count 20—Butler wrongly denied his grievance on February 20, 2021, without investigating or considering his credible evidence.

Count 21—Butler wrongly denied his grievance on April 12, 2021, doing nothing to address his need for nutritional information to control his blood sugars.

Count 22—Butler wrongly denied his grievance on April 19, 2021, without disciplining or correcting others who failed to ensure he was in the insulin line.

Count 23—Butler wrongly denied his grievance on April 29, 2021, with a canned response to his claims of discrimination and retaliation.

Count 24—Butler wrongly denied his grievance on June 28, 2021, related to the nurses' mistakes in administering his insulin.

All counts alleging the inadequate and mishandling of grievance procedures or the wrong and unfair grievance denials are subject to dismissal as stated above. *See Burnett v. Allbaugh*, 715 Fed. Appx. at 852. The failure to supervise does not create personal liability and the denial of grievances is not enough to attach liability. That the plaintiff disagrees with Warden Butler's responses to his grievances does not state the violation of constitutional rights or prove any injury. *Miles v. Sayeed*, 2019 WL 4958230, at *3 (D. Kan. Oct. 9, 2019) (and cases cited therein). The

23

plaintiff's allegations are not sufficient to state a claim of discrimination or retaliation under the ADA.

**Major Randolph:**

Count 25—Randolph failed to supervise officers to ensure Erwin was released properly for the insulin line.

        The conclusory allegation of a supervisory status does not set forth a basis for § 1983 liability. The plaintiff fails to allege the personal actions taken by Major Randolph by date, location and circumstance that violated his constitutional rights. This count utterly lacks any supporting facts establishing a plausible claim for relief under § 1983 or the ADA.

**Deputy Warden Moore**:

Count 26—Moore unjustly approved discipline against Erwin on April 8, 2021, despite his complaints of discrimination, retaliation and procedural denials, and unjustly approved disciplinary action on April 2, 2021, despite his allegations that officers lied.

        The plaintiff does not allege a constitutionally protected liberty interest or property interest not subject to qualified immunity. Nor has he alleged or shown the subsequent invalidation of his disciplinary conviction. Specifically, the plaintiff does not show his disciplinary conviction affected the length of his sentence or exposed him to atypical and significant hardships in relation to the ordinary incidents of prison life. The plaintiff seeks only compensatory relief on his claims involving the disciplinary proceedings. Therefore, his § 1983 claim is barred by *Heck*. Nor are there facts alleged to support an ADA claim against Deputy Moore.

**Captain Dale Call:**

Count 28—In a conversation on May 6, 2021, Call falsely told Erwin that he had had no power to order Nurse Myer to give him insulin.

There is nothing alleged here to support a plausible claim for relief. That the Captain Call denied having the authority to supervise or order a nurse to administer medical care hardly states a claim for relief. Not only does the plaintiff fail to allege how the statement is false, but he does not show any right denied or injury caused by the Captain Call's comment to Erwin.

**Captain Hickson:**

Count 29—In a conversation on May 14, 2021, Hickson responded to Erwin's complaints about not being released for insulin line and request for the officers to be disciplined. Hickson told Erwin to leave and that he would do his job.

Captain Hickson's response to Erwin's complaints and suggestions do not rise to the level of any constitutional violation or ADA violation. *See Blackbear v. Butler County Jail*, 2018 WL 741794, at *5 (D. Kan. Feb. 7, 2018). For that matter, the complaint fails to allege any right denied or injury caused by Hickson's response.

**Lieutenant A.J. Johnson:**

Count 30—Johnson refused to help Erwin on February 10, 2021, to get the bread missing from his snack sack.

The only alleged act is the single instance of not helping Erwin to secure bread he claims was missing from his snack sack on this one day. There is nothing about this alleged act that rises to the level of a constitutional violation or that states an ADA violation. The plaintiff also has not alleged that he sustained any injury from this act.

**Classification Administrator M. Bos:**

Count 31—On her report of March 31, 2021, Bos lied in saying that Erwin had made threatening and disrespectful comments to staff and that staff had addressed his complaints.

Count 32—Bos responded to a grievance on March 31, 2021, without doing anything to help Erwin or investigating his complaint.

"A prisoner has no constitutionally guaranteed immunity from being wrongly or falsely accused of conduct which may result in the deprivation of a protected liberty interest." *Lopez v. Celaya*, 2008 WL 205256 at *5 (N.D.Cal.2008). Rather, if a prisoner is provided a disciplinary hearing that affords him procedural due process, allegations of a falsified report do not state a claim for relief. See *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir.1984). More importantly, the plaintiff has failed to allege the deprivation of any liberty interest here.

While Erwin's written grievances may be relevant to other claims, the grievances themselves do not state a constitutional claim under § 1983. *Williams v. Dole*, 2020 WL 5889441, at *1 (D. Kan. Oct. 5, 2020) (citing *See Von Hallcy v. Clements*, 519 Fed. Appx. 521, 523 (10th Cir. 2013) (no constitutional right to prison grievance procedures); *Tapp v. Proto*, 404 Fed. Appx. 563, 566 (3rd Cir. 2010) (same); *Watson v. Evans*, 2014 WL 7246800 *7 (D. Kan. 12/17/2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts), *aff'd*, 741 Fed. Appx. 545 (10th Cir. Jul. 5, 2018); *Strope v. Pettis*, 2004 WL 2713084 *7 (D. Kan. 11/23/2004) (alleged failure to investigate

grievances does not amount to a constitutional violation). These counts are subject to dismissal for failure to state a plausible claim for relief.

**Unit Team Manager Martin**:

Count 33—Martin responded on February 23, 2021, to Erwin's Form 9 on dietary issues explaining her efforts in talking with Aramark and staff. Because his problems continued with meals and snacks, Erwin alleges that he believes that Martin did not take actions as stated but retaliated for his grievances.

Count 37—Apparently in response to Erwin's Form 9 request of June 5, 2021, Martin said his issues would be addressed, but his problems continued despite repeated grievances. Erwin alleges that he believes Martin did nothing to improve her staff's performance.

The plaintiff's speculative allegations fail to show Martin's personal participation with any denial of constitutional rights or with any violation of the ADA. There is no factual basis alleged for supervisory liability. He also does not allege any basis for supervisory liability. His complaint fails to present facts showing that but for Martin's retaliatory motive toward Erwin her staff's performance would have improved. *Peterson v. Shanks*, 149 F.3d at 1144. These counts are subject to dismissal for not stating a claim for relief.

**Unit Team Supervisor Buchanan**:

Count 34—Buchanan responded to Erwin's grievance about meal issues on March 24, 2021, saying she would monitor his meal issues, but the plaintiff complains that Buchanan despite being told the danger with Erwin having low or high blood sugar levels.

The complaint alleges only factual details concerning his grievance which does not state a constitutional claim for relief. He fails to set forth any facts and details showing Buchanan acted with deliberate indifference toward Erwin's health and safety and was personally involved in any sufficiently serious circumstance that subjected Erwin to a substantial risk of serious harm. This count fails to state a plausible claim for relief.

**Unit Team Supervisor Daignault:**

Count 35—Daignault failed to respond to Erwin's Form 9 inmate request to staff member on March 14, 2021. He alleges that he complained about not being let out for insulin line and about the need for this list to be updated. Erwin also alleges that Daignault's failure to respond to his request led to his segregation on March 22, 2021, because CO Stevenson did not release him for the insulin line.

The only act alleged against Daignault is his failure to respond to Erwin's Form 9 request. The complaint fails to allege Daignault's personal participation in any violation of rights or duties that injured Erwin. There is no plausible factual or legal basis set forth for how Daignault is responsible for Erwin's segregation and fine. No plausible claim for relief is stated here.

**Unit Team Supervisor Horsch:**

Count 36—Horsch misconstrued and failed to investigate Erwin's grievance on April 22, 2021, about not being properly released for insulin on April 19, 2021.

As the case law cited and quoted above establishes, the handling of grievances does not give rise to a constitutional claim. This count is subject to dismissal.

**CS1 and Officer in Charge Austin:**

Count 38--On March 24, 2021, Austin delivered Erwin's 2800 meal over two hours after his insulin shot and refused Erwin's request to get the bread missing from the meal. Erwin alleges Austin lied in saying the kitchen was out of bread. Austin also is alleged to have failed to supervise his crew and thereby put Erwin at risk.

These allegations fail to establish supervisory liability or any plausible claim for relief. Delivering lunch late and then not going back to the kitchen for bread fail to allege sufficiently serious circumstances or a substantial risk of harm.

**CS1 and Officer in Charge Kasper:**

Count 39—On April 18, 2021, Kasper failed to supervise other officers in calling insulin for Erwin at dinner and failed to call himself.

Count 40—On May 3, 2021, Kasper failed to supervise an officer in calling insulin for Erwin, and the nurse had to contact another officer to bring Erwin for the insulin line.

Kasper's supervisory status does not create personal liability. The plaintiff does not lay out any factual basis that comes close to showing deliberate indifference. At most, these are isolated incidents showing negligence rather than a known act of disregarding an excessive risk to an inmate's health. As the plaintiff alleges, other staff caught the oversight and secured Erwin's access to insulin. These counts do not state a plausible claim for relief.

**CS1 Rudd:**

Count 41—On April 17, 2021, Rudd failed to call Erwin for insulin line on time and was apparently ten minutes late.

The complaint does not allege facts showing this to be anything more than an isolated incident of negligence by Rudd. Nor does the plaintiff allege how a ten-minute delay is a sufficiently serious circumstance involving an excessive risk of substantial harm to him. "Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm." *Lynn v. WIllnauer*, 2021 WL 1390384, at *11 (D. Kan. Apr. 13, 2021) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). This count is subject to dismissal for failure to state a claim for relief.

**CS1 and Officer in Charge Simpson:**

Count 42—On April 17, 2021, Simpson failed to ensure the officer in the corrections booth called for insulin and did not discipline the officer.

Simpson's supervisory status does not create personal liability, and his failure to discipline the control booth officer did not result in any injury or violation of the plaintiff's rights. This counts states no plausible claim for relief.

**Corrections Officer Neeley:**

Count 43:  On February 10, 2021, when food services denied Erwin's request for bread in his snack sack, Neeley refused to help Erwin with obtaining bread despite knowledge about the importance of bread to his condition.

**Corrections Officer Cline:**

Count 44--On February 22, 2021, Cline refused Erwin's request to fix his meal tray as it had a cinnamon roll instead of three slices of bread.

**Corrections Officer Mounce:**

Count 45—On February 20, 2021, Mounce refused to call Aramark to have the cinnamon roll replaced with three slices of bread, so his blood sugars become dangerously high at lunch.

**Corrections Officer Cervantes:**

Count 46—On March 24, 2021, Erwin complained to Cervantes of low blood sugar at lunch, but Cervantes refused to get him a lunch tray or to call a nurse.

**Corrections Officer Latham:**

Count 47—On March 24, 2021, Latham refused to get Erwin the missing bread at lunch. Instead of going to Aramark, Latham tried giving him crackers which are not a carb equivalent to bread.

For counts 43 through 47, the plaintiff's complaint fails to allege circumstances stating a plausible claim of deliberate indifference. There is nothing alleged here to show that the officers were involved with anything more than delivering meals. There is no alleged basis for the officers having a duty to check that the meals were consistent with the plaintiff's alleged dietary needs. Nor are there facts showing the officers were in a position to know that the meals were wrong based on something more than Erwin's complaints. Because these different incidents with the officers occurred separately and were isolated in character, the allegations fail to make a plausible showing that the officers were subjectively aware of an objectively serious medical need and then recklessly disregarded it by not securing bread in one meal, by not getting bread to replace a cinnamon roll, or by offering crackers in lieu of bread. See *Wilson v. Falk*, 877 F.3d 1204, 1209 (10th Cir. 2017) (a

31

plaintiff must allege facts showing the officers were subjectively aware of an objectively serious medical need and recklessly disregarded that risk). These counts fail to state a plausible claim for relief.

**Corrections Officer Latham:**

Count 49—On June 5, 2021, Latham refused to call insulin line for Erwin.

**Corrections Officer Tallman:**

Count 48—On March 24, 2021, Tallman delayed answering Erwin's emergency call button at lunch and then refused Erwin's request for a nurse when he said he had signs of low blood sugar.

**Corrections Officer Cole:**

Count 50—On May 3 and June 4, 2021, Cole failed to call insulin for Erwin, and nurses eventually called the insulin for him.

Count 52—On April 19, 2021, Cole failed to call insulin line, but a nurse called for Erwin.

**Corrections Officer Miller:**

Count 51—On April 17 and May 4, 2021, Miller failed to call insulin line at breakfast times.

**Corrections Officer Darter:**

Count 53—On April 17, 2021, Darter failed to let out Erwin for the insulin line.

**Williams:**

Count 54—Not otherwise named or identified in the complaint, Williams, presumably a corrections officer, is alleged to have failed to let out Erwin or call insulin line at dinner on April 18, 2021.

**Hancock:**

Count 55—Not otherwise named or identified in the complaint, Hancock, presumably a corrections officer, is alleged to have failed to call insulin line on April 18, 2021.

**Dunning:**

Count 56—Not otherwise named or identified in the complaint, Dunning, presumably a corrections officer, is alleged to have failed to call breakfast insulin line on May 14, 2021, and then refused to release him until regular meal line.

**Corrections Officer Stevenson**:

Count 57—On March 22, 2021, Stevenson refused to let out Erwin for insulin line at dinner, and Erwin's resulting behavior caused him to be sent to segregation. His blood sugar was "very low" when cleared for segregation.

Counts 48 through 57 allege claims against individual officers for having failed to call the plaintiff for insulin lines and/or to release him for insulin line on different dates despite knowledge that he was a brittle diabetic and on the insulin list. Absent from these counts is an allegation that the plaintiff never received insulin on the occasion and that he was substantially harmed as a result from the delay. Instead, in several of these counts, the plaintiff admits others corrected the officers' mistakes in failing to call or release him. Because these counts allege nothing more than negligence and delay, they fail to state a plausible claim of deliberate indifference for an Eighth Amendment violation.

**Director of Nursing Chapman for Centurion:**

Count 58—Chapman failed to supervise ARNP Motter who made mistakes on April 26, 2021, Nurse Myers who denied Erwin insulin on May 6 and 7, 2021, and again denied

him insulin on June 24, 2021, which allegedly resulted in injuries from use of force, lost wages, fine, and segregation.

This count exclusively states claims based on Chapman's failure to supervise and discipline nurses over their administration of insulin to Erwin. Lacking are any allegations for establishing supervisory liability under § 1983. As stated earlier in this order, the plaintiff cannot state an ADA claim against Centurion or its employees, and this ruling applies also to counts 58-60, 62-66. This count fails to state a claim for relief.

**Advanced Registered Nurse Practitioner Motter for Centurion:**

Count 59—Motter incorrectly entered Erwin's insulin orders into the computer resulting in the denial of insulin on May 6, 2021, and breakfast on May 7, 2021. Nurse Wolff corrected the orders on May 7, 2021.

**Nurse Plush for Centurion:**

Count 63—Plush failed to update the computer on March 14, 2021, to include Erwin on the insulin line. Erwin alleges this resulted in him going to segregation on March 22, 2021, and severe low blood sugar.

These two counts do not allege any circumstances suggesting anything but negligence by the defendants. There are no facts stated here to sustain any plausible inference of anything approaching deliberate indifference on the defendants' part. These counts are subject to dismissal.

**Nurse Myers for Centurion:**

Count 60—Myers denied Humalog insulin to Erwin on May 6 and 7, 2021, stating there was no such insulin. Myers denied Erwin's request to call Motter to have his orders

changed to Norolog insulin. Later the morning of May 7, 2021, Nurse Wolff found Humalog insulin. Erwin filed grievances against Myers. Myers denied Humalog insulin to Erwin on June 24, 2021, allegedly leading to disciplinary cases during which he was injured, fined, and placed in administrative segregation. Erwin alleges Myers's denial on June 24th was in retaliation for his earlier grievances.

This count too fails to state circumstances showing that Myers was anything more than negligent in stating that a certain kind of insulin was unavailable. That another nurse later found this insulin and apparently administered it makes this a delay of medical care claim with no evidence of substantial harm. The plaintiff's conclusory allegations of retaliation on June 24th are insufficient to establish a causal nexus, as there is no close temporal proximity or other circumstances suggesting Nurse Myers was acting on a retaliatory motive in denying Humalog insulin to Erwin on this occasion. This count fails to state a plausible claim for relief.

**Unidentified EAI Officer**:

Count 61--Officer denied his request of March 2, 2021, to preserve video on February 10, 2021, to dispute that bread had been sent to his cell. The officer told Erwin the video was unavailable.

The plaintiff's conclusory allegations that he believes the video was available and that the officer simply lied to him fail to state a plausible claim for the denial of a constitutionally protected right.

**Food Services Supervisor Macdonald for Aramark**:

Count 62—On February 10, 2021, Macdonald denied him bread as part of his diabetic diet. When she refused to fix her mistake, Erwin was placed in segregation, fined, and

lost job/wages. On April 16, 2021, Macdonald gave Erwin a regular tray rather than his special meal and then refused to fix the mistake.

**Food Services Supervisors for Aramark:**

Count 64—While in segregation on February 2, 2021, Erwin received a "2800 labeled" food tray having a cinnamon roll. He alleges this caused his blood sugar to be dangerously high. On March 21, 2021, Erwin received his special lunch tray late by over two hours.

Isolated acts of negligence by the defendants in providing requested diets do not establish a constitutional violation. *Kanatzar v. Cole*, 2018 WL 3495844, at *3 (D. Kan. Jul. 20, 2018) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1070-71 (10th Cir. 2009)). At most, the plaintiff alleges that over the span of three months, the defendant Macdonald on two occasions disagreed with the plaintiff's opinion over what was a sufficient and appropriate meal. There is no allegation here that Macdonald or the other food supervisors knew of and disregarded an excessive risk to the plaintiff's health by not providing him the food he requested on these separate occasions. The count fails to show the defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Negligence in meeting dietary requirements does not amount to a constitutional violation merely because the victim is a prisoner. These counts fail to state plausible claims for relief.

**Food Services Director Weaver for Aramark:**

Count 65—From February 2021 to the present, Erwin alleges he has filed numerous grievances about his meals having the wrong foods or insufficient amounts. Director Weaver failed to require his Assistant Hays to grant Erwin's requested

accommodations and failed to supervise his staff who made these mistakes. This "has caused me numerous medical problems including so bad nurses had to revive me." ECF# 5, p. 54.

This count alleges only claims for failure to supervise and states no other basis for personal liability. Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d at 1239.

**Assistant Food Services Director Julie Hay for Aramark:**

Count 66—In February 2021, Hay responded to Erwin's grievance by saying that bread was served separately later. Hay refused to fix Erwin's problems set out in grievances about his diet on April 16, 2021, June 28, 2021, July 11, 2021, March 24, 25, and 27, 2021, and February 3, 11, and 20, 2021. Besides not fixing the problems or meeting his accommodation, Hay lied in her responses to Erwin grievances. Hay also ignored Erwin's two Form 9 complaints in July of 2021.

This count certainly lays out the plaintiff's repeated grievances and communications with Hay over alleged failures to provide the plaintiff's requested dietary needs. This count also reveals some dispute between Hay and the plaintiff over what the 2800 diet requires and the role of the KDOC dietician. The plaintiff's disagreement and demand for a diet different from that ordered by medical staff and dieticians does not state a constitutional violation. See *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *see also Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (prisoner's "contention that he had a right to a particular course of treatment" fails

in showing deliberate indifference). Consequently, the court cannot tell from this count what the plaintiff is alleging to show Hay's deliberate indifference to the plaintiff's dietary needs. This count is subject to dismissal without further facts showing Hay knew of and disregarded an excessive risk to the plaintiff's health by not providing him the requested food and by negligently allowing incorrect food to be delivered. The count fails to show the defendant Hay was aware of sufficient facts from which the inference could be drawn that a substantial risk of serious harm existed to the plaintiff from these irregular failures to meet his requested dietary needs. Mere negligence in meeting dietary requirements, however, does not rise to a constitutional violation merely because the victim is a prisoner.

**RESPONSE REQUIRED**

For the above-stated reasons, the plaintiff's complaint is subject to dismissal for failure to state a claim for relief. appears to fail to state a claim for relief and, therefore, is subject to dismissal. The Tenth Circuit instructs courts to grant leave to amend "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The plaintiff is hereby ordered to show cause by February 11, 2022, why his complaint should not be dismissed for failure to state a claim or, in the alternative, file an amended complaint which cures all the pleading deficiencies discussed above.  If the plaintiff does not respond within the prescribed time, this matter may be dismissed without further notice.

IT IS THEREFORE ORDERED that the plaintiff is granted until February 11, 2022, to file either a memorandum showing good cause why this case should not be dismissed for each reason discussed above or an amended complaint curing all the pleading deficiencies discussed above.

Dated this 11th day of January, 2022, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge